```
UNITED STATES BANKRUPTCY COURT              FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re:                                       :
                                             :
LATANYA YVONEE BAILEY,                       :   Chapter 7
                                             :   Case No. 06-10994(SMB)
                       Debtor.               :
---------------------------------------------------------------X
LATANYA YVONEE BAILEY,                       :
                                             :
                       Plaintiff,            :
                                             :
          --against--                        :   Adv. Proc. No. 06-1761
                                             :
SOCIAL SECURITY ADMINISTRATION,              :
                                             :
                       Defendant.            :
---------------------------------------------------------------X
```

**MEMORANDUM DECISION REGARDING
CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**A P P E A R A N C E S:**

MANSFIELD SERPE, PLLC
Attorneys for Plaintiff
267 Fifth Avenue
Suite 102
New York, New York 10016

      Matthew S. Mansfield, Esq.
           Of Counsel

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
86 Chambers Street
New York, New York 10007

      Matthew L. Schwartz
      Assistant United States Attorney

**STUART M. BERNSTEIN**
**Chief United States Bankruptcy Judge**

The plaintiff-debtor is a representative payee who received Supplemental Security Income ("SSI") benefits from the defendant on behalf of her disabled children. After the plaintiff filed this case, the defendant attempted to recoup pre-petition SSI overpayments, primarily by reducing the ongoing post-petition payments. The principal question presented by the parties' cross-motions for summary judgment is whether the post-petition reduction violated the automatic stay.

The Court concludes that the post-petition reduction did not violate the automatic stay. For the reasons that follow, the plaintiff's motion for summary judgment is denied, and the defendant's motion for summary judgment is granted in part and denied in part.

## BACKGROUND

The facts are undisputed. At the beginning of the relevant period, the plaintiff had two disabled children, Ryann and Robert. They had been receiving SSI disability benefits since July 2000 and April 2004, respectively. (Declaration Of Paul Doersam, dated Apr. 20, 2007, at ¶ 2) ("Doersam Declaration") (ECF Doc. # 17.) Because Ryann and Robert were minors, the payments were made to the plaintiff as a representative payee. (Id.)

Prior to May 8, 2006, the date that the plaintiff filed her chapter 7 petition, the defendant determined that it had made overpayments on behalf of Robert, who had died four months earlier. (Id., at ¶¶ 2-3.) On July 14, 2006, the defendant wrote to "LATANYA YVONNE BAILEY FOR ROBERT JUNIOUS DIXON JR" requesting the payment of $233.31 by August 1, 2006. The letter warned:

2

>       You MUST repay this money to the Social Security Administration.  Please
> send us the payment right away.
>
> If we don't receive the amount due, we can collect the money owed us:
>
> • from Federal income tax refunds or other Federal payments you may be due, or
> • from future Supplemental Security Income payments, or
> • from future Social Security benefits, or
> • through a Federal court lawsuit. or
> • by ordering your employer to withhold and send us a portion of your pay.

(Complaint, dated October 5, 2006, at Exhibit A) (ECF Doc. #1.)  The defendant took no further action to collect the overpayment to Robert.  (Doersam Declaration, at ¶ 3.)

The defendant also attempted to collect the overpayment made on behalf of Ryann, but followed a different route.  When the bankruptcy was filed, Ryann was receiving monthly SSI benefits of $612.67.  (Id., at ¶ 4.)  The defendant was withholding $62.60 from Ryann's benefits at that time, and had been withholding various amounts from Ryann's monthly benefits since March 2005 to correct the overpayment.  (Id.)

On or about August 7, 2006, the defendant sent a letter to the plaintiff informing her about changes in Ryann's SSI benefits. (Doersam Declaration, Ex. A.)  The letter stated that Ryann's benefits had been recalculated, her new monthly benefit would be $336.67, and the defendant would continue to deduct $62.60 per month until the balance of the overpayment in the sum of $2,174.06 was recovered.  The letter also described the plaintiff's right to a hearing.  Unlike the previous letter concerning Robert, this letter did not ask the plaintiff to send a payment or warn her that if she did not, the defendant might try to collect the money from her tax refunds or through a wage order served on her employer. (Doersam Declaration, at ¶¶ 4-6.)

3

The next day, the defendant sent another letter stating that it would withhold only $1.00 from each monthly payment on account of the overpayment. (Id., Ex. B.) The defendant thereafter sent several letters, explaining adjustments in the benefit or the amount withheld each month. Eventually, the defendant wrote that it would no longer withhold any sum, refunded $1,258.15 and ceased all collection efforts. (Doersam Declaration, ¶¶ 7-12, Ex. C, D and E.)

The plaintiff commenced this adversary proceeding on October 5, 2006. The complaint demanded compensatory and punitive damages for violations of the automatic stay arising from the defendant's post-petition efforts to collect the overpayments. The complaint also requested attorneys' fees. The defendant moved for summary judgment first, and argued the following points: the attempts to collect the overpayments did not implicate property of the estate, the "recoupment" of the overpayments did not violate the stay, and the dispute was moot because the defendant had stopped its collection efforts and even refunded amounts that had been withheld. As a result, the plaintiff had not suffered any actual damages, and in the absence of actual damages, the plaintiff could not recover her attorneys' fees. Finally, the punitive damages are barred by statute.

The plaintiff responded with her own motion for summary judgment. The plaintiff's motion attempted to refute the defendant's legal arguments. In addition, the plaintiff submitted an affidavit stating that defendant's collection efforts sent her into a depression, and caused her emotional distress. (Affidavit of Plaintiff in Support of Motion for Summary Judgment, sworn to May 14, 2007, at ¶¶ 9-10) ("Plaintiff Affidavit") (ECF Doc. #25.)

4

## DISCUSSION

Section 362(k)(1)[1] of the Bankruptcy Code provides a remedy in the nature of civil contempt to an individual debtor harmed by a willful violation of the automatic stay.[2] The plaintiff contends that the defendant's collection activity violated § 362(a)(6), which stays

> any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.[3]

Section 362(a)(6) does not prohibit actions to collect the debtor's obligations from nondebtors. 3 COLLIER ¶ 362.03[8][b], at 362-34. This distinction is important because of the different actions taken by the defendant to collect Ryann's and Robert's overpayments. Accordingly, I consider each separately.

### A. Ryann's Overpayments

As noted, the defendant reduced the postpetition benefits payable to the plaintiff on Ryann's behalf as her representative payee in order to recapture the prepetition overpayments. Although the defendant eventually stopped withholding any of Ryann's benefits, and even refunded what it had withheld, its actions arguably violated §

---

[1] The individual debtor's remedy was formerly found in 11 U.S.C. § 362(h). The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 moved the provision, with certain modifications not germane to this dispute, to § 362(k)(1).

[2] Section 362(k)(1) states:

> Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

The exception in paragraph (2), referred to in the quoted portion of the statute, does not apply to this case.

[3] The plaintiff also contended that the defendant violated § 362(a)(1). The latter automatically stays an "action or proceeding," but the defendant did not commence or continue an action or proceeding against the plaintiff, and the paragraph does not apply. The wording of § 362(a)(6), which is similar to the second clause in § 362(a)(1), applies more broadly to any act to collect a prepetition claim against the debtor, whether taken against the debtor or the debtor's estate. 3 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 362.03[8], at 362-32 (15th ed. rev. 2007)("COLLIER").

5

362(a)(6), provided that it sought to recover a claim against the plaintiff from property belonging to the plaintiff. Neither condition, however, has been met.

"The basic purpose underlying the [SSI] program is to assure a minimum level of income for people who are age 65 or over, or who are blind or disabled and who do not have sufficient income and resources to maintain a standard of living at the established Federal minimum income level." 20 C.F.R. § 416.110 (2007). If the beneficiary is a minor, or it is otherwise in the best interests of the beneficiary, SSI benefits may be made to another person as the beneficiary's "representative payee." 42 U.S.C. § 1383(a)(2)(A)(ii)(I); 20 C.F.R. § 416.610(b). If the beneficiary is a child, the Social Security Administration ("SSA") prefers the "natural or adoptive parent who has custody of the beneficiary" to be the representative payee. 20 C.F.R. § 416.621(c)(1).

A representative payee under the SSI program is essentially a trustee. She must "[u]se the benefits received on [the beneficiary's] behalf only for [the beneficiary's] use and benefit in a manner and for the purposes he or she determines under the guidelines in this subpart, to be in [the beneficiary's] best interests." Id., § 416.635(a). In certain cases, she must segregate the benefits from her own property and show that the beneficiary owns the benefits, id., § 416.635(b), and "[t]reat any interest earned on the benefits as [the beneficiary's] property." Id. § 416.635(c). Finally, she must account in writing to the SSA for the use of the benefits. Id., §§ 416.635(e), 416.665.

The amount of the benefit is subject to recalculation for various reasons. The recalculation may apply retroactively, and if the benefits are recalculated at a lower amount, this will result in an overpayment. Where there has been an overpayment, the

beneficiary is obligated to repay the SSA in either of two ways. If she is no longer eligible for SSI benefits, she must refund the amount of any overpayment directly, id., § 416.560, and SSA may, in certain instances, recover the overpayment from the beneficiary's federal tax refund. See id., § 416.580. If the beneficiary is still receiving benefits, "any payment due the overpaid recipient . . . is adjusted for recovery of the overpayment." Id. § 416.570; accord 42 U.S.C. § 1383(b). In other words, SSA may set off or recoup past overpayments by reducing future benefits.

Under some circumstances, the representative may also be held liable. For example, like any trustee, "[a] representative payee who misuses [the beneficiary's] benefits is responsible for paying back misused benefits." 20 C.F.R. § 416.641(a).

Here, the defendant never asserted a claim against the plaintiff; instead, it was the plaintiff who insisted that she personally owed money to the SSA. Her schedules listed a claim against her held by the SSA arising from 2005 SSI overpayments. But the defendant never contended that the plaintiff personally owed the SSA any money, and never suggested that she had "misused" Ryann's benefits. Furthermore, the defendant sought to collect the overpayment from Ryann's future benefits and not from the plaintiff. The SSI benefits belonged to Ryann, and were not available to the plaintiff or to her estate. Accordingly, the defendant did not violate the automatic stay when it sought to satisfy Ryann's liability for the overpayment by reducing the future benefits payable or paid to the plaintiff as her representative payee.[4] The defendant is, therefore, entitled to

---

[4] The plaintiff also argued that the defendant was barred from collecting the overpayments from Ryann (and Robert) because they were not at fault. Assuming this to be correct, Ryann (or Robert, or his estate) might have a claim against the SSA. Those claims do not concern the plaintiff's creditors or her estate.

7

partial summary judgment dismissing this aspect of the plaintiff's claim, and the plaintiff's corresponding cross-motion is denied. In light of this conclusion, it is unnecessary to consider the defendant's other arguments.

**B.    Robert's Overpayments**

The defendant's effort to collect Robert's overpayments leads to a different conclusion. Robert died prior to the petition date. His death left an uncollected overpayment. The SSA Program Operations Manual System ("POMS") [5] SI 02201.023.C.2 states that if the beneficiary received an overpayment, and dies without leaving an estate, SSA should seek to recover the overpayment from the "responsible payee," which includes the representative payee.

The July 14, 2006 letter constituted an effort to collect the overpayment directly from the plaintiff.[6] Although addressed to the plaintiff "for Robert," it demanded repayment, and threatened to deduct the debt from tax refunds or other federal payments that might be due, future SSI or Social Security benefits or future wages. As Robert was dead, these potential sources of collection must be read to refer to the plaintiff's present or future property rights. Indeed, even if Robert were still alive, the threat to serve a wage order on an employer could only apply to the plaintiff. At oral argument, the defendant argued that this was a form letter, untailored to the specific circumstances. But form letters can violate the automatic stay if they demand payment in violation of the automatic stay.

---

[5]    The POMS is SSA's internal operating manual. It represents the SSA's interpretation of its statutory and regulatory mandates. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998). It is available on line at http://policy.ssa.gov/poms.nsf/aboutpoms.

[6]    For this reason, the doctrine of recoupment does not apply.

8

The defendant also argues that even if the July 14th letter violated the automatic stay, the plaintiff did not suffer any "actual damages."  She did not repay Robert's debt, the defendant did not take any further steps to collect it, and it will be discharged.  In short, the plaintiff did not suffer any financial injury.  In response, the plaintiff claimed that she suffered emotional injury and distress, and implies that these damages are recoverable under § 362(k), even in the absence of a financial injury.

As the defendant's reply correctly observes, the availability of emotional distress damages under § 362(k) is an unsettled question.  Compare Aiello v. Providian Fin. Corp., 239 F.3d 876, 880 (7th Cir. 2001)(Posner, J.)(emotional injury not compensable under § 362(h)[now § 362(k)] in the absence of financial injury) and United States v. Harcher, 331 B.R. 720, 728 (N.D. Ohio 2005)(same) with Dawson v. Washington Mut. Bank, F.A. (In re Dawson), 390 F.3d 1139, 1148-49 (9th Cir. 2004)("actual damages" under § 362(h) include damages resulting from "significant emotional harm") and United States v. Holden, 258 B.R. 323, 328 (D. Vt. 2000)("compensation for pain, suffering and mental anguish is available as 'actual damages'" under § 362(h)).  Agreeing with Aiello, the defendant concludes: "that debtor in this case seeks a judgment of civil contempt — the purpose of which is to ensure statutory compliance — underscores [Aiello's] reading of the statute.  As a matter of law, therefore, emotional damages are unavailable to debtor."  (Reply Memorandum of Law in Further Support of the Government's Motion for Summary Judgment and in Opposition to Plaintiff's Cross-Motion for Summary Judgment, dated May 30, 2007, at 8)(ECF Doc. # 27.)  The plaintiff did not file a reply on her cross-motion, or respond to this argument.

9

The defendant's position mischaracterizes the plaintiff's claim. She is <u>not</u> seeking an order of civil contempt. She is seeking a compensatory award of "actual damages" as expressly provided for in § 362(k) of the Bankruptcy Code. Furthermore, even if her claim were viewed as one for civil contempt, civil contempt is not limited to coercing statutory compliance; it can also serve as a remedy to compensate a party injured by the disobedience of a court order. <u>Manhattan Indus., Inc. v. Sweater Bee By Banff, Ltd.</u>, 885 F.2d 1, 5 (2d Cir. 1989)("Monetary sanctions for civil contempt traditionally have been awarded to compensate the plaintiff for injury caused by past noncompliance or to prevent continued disobedience."), <u>cert. denied</u>, 494 U.S. 1029 (1990); <u>Perfect Fit Indus., Inc. v. Acme Quilting Co.</u>, 673 F.2d 53, 56 (2d Cir.)("[A] sanction imposed on a party held in civil contempt generally may serve either or both of two purposes: to coerce the contemnor into complying in the future with the court's order, or to compensate the complainant for losses resulting from the contemnor's past noncompliance."), <u>cert. denied</u>, 459 U.S. 832 (1982).

Cases like <u>Aiello</u> that limited "actual damages" to tangible, financial injury may have read § 362(h) too restrictively. The meaning of "actual damages" is unquestionably ambiguous given the conflicting interpretations. Section 362(a) automatically stays acts that fall short of causing tangible, financial injury. According to the legislative history, one of the purposes of the automatic stay is to stop "harassment" of the debtor. H.R. REP. NO. 95-595, at 174 (1977). "The harassment takes the form of abusive phone calls at all hours, including at work, threats of court action, attacks on the debtor's reputation, and so on. The automatic stay at the commencement of the case takes the pressure off the debtor." <u>Id.</u> at 125-26 (footnote omitted). If the automatic stay is designed, in part, to

10

grant the debtor some degree of psychic peace, § 362(k) arguably allows the recovery of "actual damages" for willful violations that cause psychic injuries. It may be that the offending conduct must meet a high threshold. Cf. RESTATEMENT (SECOND) OF TORTS § 46, cmt. d (1965) ("Liability [for the intentional infliction of emotional distress] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. . . . The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.") Emotional distress damages may also be very difficult to prove. These obstacles may preclude recovery in most cases, but it does not follow that recovery must be precluded in all cases as a matter of law.

I do not decide this issue today; the record is thin and the briefing inadequate. The plaintiff's emotional distress claim raises significant questions regarding whether and to what degree she can recover damages from the defendant based upon the transmission of a single letter. Accordingly, the Court denies the cross-motions for summary judgment to the extent the complaint asserts a claim under § 362(k) to recover "actual damages" for emotional distress based upon the defendant's attempt to collect the overpayment made on behalf of Robert.

**C.     Punitive Damages**

The Government's waiver of sovereign immunity does not extend to an award of punitive damages. 11 U.S.C. § 106(a)(3). The defendant is, therefore, entitled to a determination as a matter of law that the plaintiff cannot recover punitive damages.

11

The Court has considered the parties' remaining arguments, and concludes that they lack merit. The parties should settle an order on notice consistent with this opinion, and contact chambers to arrange a status conference with the Court.

Dated: New York, New York
July 10, 2007

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
Chief United States Bankruptcy Judge